# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 98-2742/2743

_____

Stephen P. Sugarbaker, M.D.,     *
     *
     Appellant/Cross-Appellee,     *
     *     Appeals from the United States
v.     *     District Court for the
     *     Western District of Missouri.
SSM Health Care, d/b/a St. Marys     *
Health Center,     *
     *
     Cross-Appellant/Appellee.     *

_____

Submitted: April 19, 1999
Filed: August 19, 1999

_____

Before BEAM and HANSEN, Circuit Judges, and KOPF,[1] District Judge.

_____

HANSEN, Circuit Judge.

St. Marys Health Center (St. Marys) restricted and then terminated the staff privileges of Dr. Stephen P. Sugarbaker. In response, Dr. Sugarbaker filed suit alleging that St. Marys' actions violated federal antitrust laws, as well as various Missouri state

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

laws.  The district court[2] granted summary judgment in favor of St. Marys on the basis of immunity under the Health Care Quality Improvement Act of 1986 (HCQIA).  See 42 U.S.C. §§ 11111(a)(1), 11112(a) (1994).  Dr. Sugarbaker appeals, and we affirm. Because we affirm the district court's judgment regarding immunity under the HCQIA, we do not reach St. Marys' cross-appeal challenging the district court's denial of St. Marys' motions to dismiss Dr. Sugarbaker's suit.

## I.  Background

Dr. Stephen Sugarbaker is a general surgeon who practiced in Jefferson City, Missouri.  SSM Health Care (SSM) owns and operates St. Marys Health Center in Jefferson City.  In 1994, Dr. Sugarbaker obtained provisional medical staff privileges at St. Marys.  St. Marys suspended Dr. Sugarbaker's privileges in 1995, and it eventually terminated his privileges in 1997.  Dr. Sugarbaker contends that he was the victim of a conspiracy to control the market for medical services in the Jefferson City area.  Specifically, Dr. Sugarbaker contends that because he refused to join the Jefferson City Medical Group (JCMG), members of that group conspired with persons at St. Marys to terminate Dr. Sugarbaker's medical staff privileges.

The dispute between Dr. Sugarbaker and St. Marys began in early 1995.  At that time, Mike Wilfawn, St. Marys' Department Manager for Surgical Services, and Gay Cunningham, the Vice President of Patient Services, notified Dr. John Koonce, the Surgery Department Chairman, of staff concerns regarding Dr. Sugarbaker. Dr. Koonce forwarded the concerns to St. Marys' Medical Executive Committee (Executive Committee) and requested a full review of Dr. Sugarbaker's cases.  The Executive Committee is responsible for providing recommendations to the SSM Board of Directors regarding medical staff privileges. On May 1, 1995, St. Marys informed Dr. Sugarbaker

_____

[2] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

of its concerns. Dr. Sugarbaker agreed to a full retrospective review and concurrent monitoring of his cases.

On June 19, 1995, after four surgeons had reviewed some 24 of Dr. Sugarbaker's cases, St. Marys' Surgery Review Committee met to discuss Dr. Sugarbaker's situation. The reviewing surgeons found evidence of the following: (1) delay in initiating an operation; (2) excessive surgery times in some cases; (3) excessive blood loss; (4) questionable use of antibiotics; and (5) excessive tissue removal in breast biopsies. In view of these health care quality concerns, the Surgery Review Committee recommended a precautionary summary suspension of Dr. Sugarbaker's clinical privileges. After Dr. Sugarbaker refused to request a voluntary leave of absence, the Executive Committee imposed the precautionary suspension, and on August 3, 1995, the Executive Committee voted to continue the precautionary suspension. On August 7, St. Marys provided Dr. Sugarbaker with a detailed listing of the Surgery Review Committee's case review findings. St. Marys also informed Dr. Sugarbaker of his right to request a hearing.

Dr. Sugarbaker requested a hearing, and the Executive Committee appointed an Ad Hoc Committee of independent physicians, including two general surgeons, to review the Executive Committee's concerns. The Ad Hoc Committee held a hearing on November 6, 1995, and permitted Dr. Sugarbaker to present evidence and expert testimony, and to cross-examine the Executive Committee's representative. Thereafter, the Ad Hoc Committee unanimously voted to remove the precautionary suspension due to a lack of information. The Ad Hoc Committee indicated that it had only received information concerning the procedures followed, not the factual basis for the conclusions reached by the Surgery Department.

Notwithstanding the Ad Hoc Committee's recommendation to remove the suspension due to a lack of information, the Executive Committee determined that four areas of concern remained, and it decided to send these issues back to an Ad Hoc

Committee for further consideration. Dr. Sugarbaker, however, requested that the additional hearing be directly before the Executive Committee, rather than before an Ad Hoc Committee.[3] On January 24, 1996, the Executive Committee held a six-hour fact-finding hearing. Dr. Sugarbaker was again permitted to present evidence on his own behalf, to respond to questions, and to cross-examine adverse witnesses. After this hearing, the Executive Committee voted to permanently terminate Dr. Sugarbaker's privileges. In a letter dated February 1, 1996, St. Marys notified Dr. Sugarbaker of the Executive Committee's decision. The letter stated that the Executive Committee based its decision on Dr. Sugarbaker's "lack of clinical judgment, technical ability, and ethical perspective in performance of clinical privileges." (J.A. at 760.) The letter also informed Dr. Sugarbaker of his right to an appeal and enclosed copies of the relevant sections of the Medical Staff Bylaws.

Dr. Sugarbaker appealed the Executive Committee's decision. The SSM Board appointed an Appellate Review Committee comprised of two SSM Board members and one SSM administrator. According to the Medical Staff Bylaws, the Appellate Review Committee reviews "the hearing record and any statements submitted . . . to determine whether the adverse Recommendation or decision was justified and was not arbitrary or capricious." (Id. at 240.) Contrary to the Executive Committee's views, the Appellate Review Committee recommended that Dr. Sugarbaker be provisionally reinstated for one year, that Dr. Sugarbaker be prohibited from performing emergency/trauma surgery, that he be supervised during certain types of surgery, and that all of his cases be subject to review and monitoring. (See id. at 982-83.) The

---

[3] At the time he elected to proceed directly before the Executive Committee it appears that Dr. Sugarbaker was unaware of the Ad Hoc Committee's recommendation. We note, however, that the Medical Staff Bylaws do not require notification of an Ad Hoc Committee's favorable recommendation. (See J.A. at 226.) Moreover, Dr. Sugarbaker advanced several reasons why a hearing directly before the Executive Committee was preferable (see id. at 452), and he had previously objected to the participation of certain members of the Ad Hoc Committee (see id. at 311).

4

Appellate Review Committee also found that "the Executive Committee did not act in an arbitrary or capricious manner," and that there was no "conspiracy" to oust Dr. Sugarbaker. (Id. at 984.) The Appellate Review Committee expressed a concern that the Executive Committee had not sufficiently articulated what it believed to be the standard of care in each case, but it concluded that the Executive Committee had "identified some very clear deficiencies on Dr. Sugarbaker's part," and that "sufficient evidence exists to raise concerns about Dr. Sugarbaker's practice." (Id. at 984-85.)

The Appellate Review Committee enumerated four specific deficiencies with regard to Dr. Sugarbaker's practice. First, the committee expressed concern for the amount of time Dr. Sugarbaker required to perform laparoscopic cholecystectomies.[4] The committee noted that despite Dr. Sugarbaker's inexperience in performing such operations independently, he failed to request assistance in the performance of these procedures. The Appellate Review Committee's second concern related to a neck trauma case in which the patient experienced an airway obstruction. The committee concluded that irrespective of the various possible reasons why the patient experienced the obstruction, "Dr. Sugarbaker's delay in securing the patient's airway, and, by the accounts of all witnesses present, the further delay in responding to a life and death crisis, exhibits an inability to respond appropriately in crisis situations." (J.A. at 985.) Third, the Appellate Review Committee noted that it was "unconvinced by Dr. Sugarbaker's varying explanations as to why [a patient] experienced [a] mid-procedure crisis and why Dr. Sugarbaker failed to document the event." (Id.) Finally, the committee expressed concerns for Dr. Sugarbaker's apparent lack of "self-awareness." (Id.) According to the Appellate Review Committee:

---

[4] "A laparoscopic cholecystectomy is a . . . method of performing gallbladder surgery by use of a laparoscope, which allows the surgeon to see inside the patient and perform the surgery without opening the patient's abdominal cavity." (Appellee's Br. at 16 n.7.)

[Dr. Sugarbaker's] lack of self-awareness precludes him from being self-critical about his surgical skills, which interferes with his abilities to improve in certain areas, seek appropriate assistance, or decline to perform some procedures or in some contexts, such as trauma. This perceived lack of self-awareness is consistent with the Executive Committee's concerns about Dr. Sugarbaker's judgement [sic].

(Id.)

In view of the Appellate Review Committee's decision to provisionally reinstate Dr. Sugarbaker for one year, the SSM Board voted to modify in part, and to reverse in part, the Executive Committee's recommendation to permanently suspend Dr. Sugarbaker's privileges. According to the Bylaws, when the Board's decision is contrary to the Executive Committee's recommendation, the Executive Committee may request a Joint Conference Committee to review the matter. The Joint Conference Committee is comprised of three members of the SSM Board and three members of the Executive Committee. In this case, the Joint Conference Committee essentially followed the Appellate Review Committee's decision and recommended that Dr. Sugarbaker be reappointed to the provisional staff for one year, subject to a host of substantial restrictions and conditions. The SSM Board followed the recommendations of the Appellate Review Committee and the Joint Conference Committee. Dr. Sugarbaker was eventually terminated for failing to abide by the restrictions and conditions attached to his provisional reappointment.

In accordance with Missouri law, see Mo. Ann. Stat. § 383.133 (1991), St. Marys reported its final action to the Missouri State Board of Registration for the Healing Arts. On the National Practitioner Data Bank adverse action report, St. Marys selected an "Adverse Action Classification Code" corresponding to incompetence / malpractice / negligence.

Dr. Sugarbaker filed suit against St. Marys in August 1997, alleging violations of the Sherman Act, breach of contract, tortious interference with a business expectancy, intentional and negligent infliction of emotional distress, and libel. St. Marys moved to dismiss the complaint. The district court denied St. Marys' motion to dismiss and refused to certify its decision for an immediate appeal pursuant to 28 U.S.C. § 1292(b). After Dr. Sugarbaker amended his complaint, St. Marys filed a second motion to dismiss which the district court likewise denied. St. Marys also filed a motion for summary judgment on the basis of immunity under the HCQIA. The district court denied this motion as being premature. After the close of discovery, St. Marys filed a second HCQIA-based summary judgment motion. St. Marys also filed a motion for summary judgment on the merits of Dr. Sugarbaker's claims. The district court granted St. Marys' motion for HCQIA immunity and denied as moot St. Marys' motion for summary judgment on the merits.

Dr. Sugarbaker appeals the district court's judgment granting St. Marys immunity under the HCQIA. St. Marys cross-appeals the district court's denial of its motions to dismiss.

## II.  The Summary Judgment Record

Dr. Sugarbaker first argues that the district court considered unauthenticated documents in ruling on St. Marys' HCQIA summary judgment motion. Therefore, according to Dr. Sugarbaker, summary judgment was improperly granted. We disagree.

St. Marys' first HCQIA summary judgment motion included an affidavit authenticating the peer review record that was attached to the motion. (See J.A. at 1122-23.) Dr. Sugarbaker has not identified to this court what evidence, if any, in the proffered peer review record changed between St. Marys' first and second HCQIA motions. Even assuming that the peer review record submitted with St. Marys' second HCQIA motion included unauthenticated material in addition to the previously

7

authenticated material, Dr. Sugarbaker has failed to show how the district court's reliance on such material was other than harmless error. See Dautremont v. Broadlawns Hosp., 827 F.2d 291, 295 (8th Cir. 1987) (requiring a plaintiff to show he was prejudiced by a district court's reliance on unauthenticated documents). In his reply brief, Dr. Sugarbaker suggests that he has demonstrated the unreliability and falseness of St. Marys' exhibits. (See Appellant's Reply Br. at 6 (citing J.A. at 2583 n.3, 2587-88).) We have carefully reviewed the cited passages and conclude that while these passages arguably reflect Dr. Sugarbaker's general displeasure with the peer review record, they fall far short of calling into question the authenticity or reliability of any particular document or exhibit. Therefore, we hold that the district court did not improperly grant summary judgment on the basis of an unauthenticated record. Out of an abundance of caution, however, we have attempted to confine our review to those portions of the record that were submitted and authenticated with St. Marys' first HCQIA motion.

### III. HCQIA Immunity

"Congress passed the [HCQIA] 'to improve the quality of medical care by encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior.'" Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 632 (3d Cir. 1996) (quoting H.R. Rep. No. 903, 99th Cong., 2d Sess. 2 (1986)). Congress believed that effective peer review would be furthered "by granting limited immunity from suits for money damages to participants in professional peer review actions." Id. (citing 42 U.S.C. §§ 11101(5), 11111(a)).

The HCQIA defines the term "professional review action" to mean

an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which

conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges . . . of the physician.

42 U.S.C. § 11151(9). See also Mathews, 87 F.3d at 634 (noting that the term "'professional review action' encompasses decisions or recommendations by peer review bodies that directly curtail a physician's clinical privileges or impose some lesser sanction that may eventually affect a physician's privileges").

In order for there to be immunity under the HCQIA, the professional review action must be taken:

(1)     in the reasonable belief that the action was in furtherance of quality health care,

(2)     after a reasonable effort to obtain the facts of the matter,

(3)     after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4)     in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). See also Wayne v. Genesis Med. Ctr., 140 F.3d 1145, 1148 (8th Cir. 1998). The HCQIA further creates a presumption that a professional review action meets these standards "unless the presumption is rebutted by a preponderance of the evidence." Wayne, 140 F.3d at 1148 (citing 42 U.S.C. § 11112(a)). Hence, Dr. Sugarbaker must rebut the statutory presumption that St. Marys' actions comply with the HCQIA's standards. Further, we have held that the reasonableness requirements

9

contained in section 11112(a) necessitate an objective inquiry. See id. (citing other circuits that have applied an objective standard).

It is well settled that we review the grant of summary judgment de novo, and we apply the same standards as the district court. See Wayne, 140 F.3d at 1147. The statutory presumption included in section 11112(a) adds a rather unconventional twist to the burden of proof in our summary judgment standard of review, but "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, like the district court, we must ask, "Might a reasonable jury, viewing the facts in the best light for [Dr. Sugarbaker], conclude that he has shown, by a preponderance of the evidence, that [St. Marys'] actions are outside the scope of § 11112(a)?" Austin v. McNamara, 979 F.2d 728, 734 (9th Cir. 1992). Stated differently, we must determine whether "[Dr. Sugarbaker] 'satisfied his burden of producing evidence that would allow a reasonable jury to conclude that [St. Marys'] peer review disciplinary process failed to meet the standards of HCQIA.'" Brader v. Allegheny Gen. Hosp., 167 F.3d 832, 839 (3d Cir. 1999) (quoting Bryan v. James E. Holmes Reg'l Med. Ctr., 33 F.3d 1318, 1334 (11th Cir. 1994), cert. denied, 514 U.S. 1019 (1995)).

A.    The Restriction of Dr. Sugarbaker's Privileges

Dr. Sugarbaker argues that St. Marys is not entitled to immunity because it did not satisfy the objective standards of section 11112(a). We address each of the requirements for immunity in order. It is important to reiterate that St. Marys is presumed to have complied with the standards, and Dr. Sugarbaker bears the burden of rebutting that presumption by a preponderance of the evidence.

1.    *Reasonable Belief that the Action Furthered Quality Health Care —*
       *Section 11112(a)(1)*

The first inquiry is whether the professional review action was taken "in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1). Dr. Sugarbaker presents a host of arguments in his attempt to rebut the statutory presumption of reasonableness that attaches to St. Marys' actions. He first asserts that only one of the initial grounds used to justify the precautionary suspension—the excess surgery times—survived to justify St. Marys' ultimate decision to restrict his privileges. He further points to expert testimony suggesting that the peer reviewers' concerns regarding excess surgery times were not worthy of serious consideration. Therefore, according to Dr. Sugarbaker, there was no objectively reasonable basis for imposing or continuing the original precautionary summary suspension.

These assertions, even when fully credited, miss the mark. The focus of our inquiry is not whether the Executive Committee's initial concerns ultimately proved to be medically sound. Rather, our objective inquiry focuses on whether the professional action taken against Dr. Sugarbaker was taken "in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1).

The Executive Committee initiated the peer review process after receiving complaints regarding Dr. Sugarbaker's practice. It is undisputed that St. Marys imposed the precautionary suspension only after further investigation revealed objective medical concerns regarding: (1) delay in initiating an operation; (2) excessive surgical times; (3) excessive blood loss; (4) questionable use of antibiotics; and (5) excess tissue removal in breast biopsies.

In fact, the record in this case includes ample evidence that concerns for quality health care remained throughout the peer review process. For example, the Appellate Review Committee enumerated specific concerns regarding Dr. Sugarbaker's practice. With respect to Dr. Sugarbaker's long operating times in performing laparoscopic cholecystectomies, the Appellate Review Committee's decision demonstrates that its

11

concerns encompassed more than the economic aspect of the excessive operating times. In particular, the Appellate Review Committee concluded that the excessive operating times were attributable to Dr. Sugarbaker's inexperience with the procedure, and it expressed concern that Dr. Sugarbaker failed to request any assistance in performing these procedures despite his inexperience. (See J.A. at 985.) The Appellate Review Committee further concluded that Dr. Sugarbaker had exhibited "an inability to respond appropriately in crisis situations." (Id.) Finally, the Appellate Review Committee concluded that Dr. Sugarbaker demonstrated "a lack of self-awareness" that "preclude[d] him from being self-critical about his surgical skills, which interferes with his abilities to improve in certain areas, seek appropriate assistance, or decline to perform some procedures or in some contexts, such as trauma." (Id.)

The Board's final decision restricting Dr. Sugarbaker's privileges and prohibiting him from performing trauma surgery, emergency surgery, and laparoscopic cholecystectomies is entirely consistent with the Appellate Review Committee's conclusions. (See id. at 1008.) Thus, it is clear that concerns for health care quality remained at the forefront throughout the peer review process. The fact that some of the specific concerns shifted or changed over time does not rebut the presumption that St. Marys restricted Dr. Sugarbaker's privileges "in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1).

Dr. Sugarbaker also argues that because the Ad Hoc Committee recommended that the precautionary suspension be lifted, there was no objectively reasonable basis for continuing the suspension. This argument ignores the stated basis for the Ad Hoc Committee's recommendation. The Ad Hoc Committee expressly stated that its recommendation favoring Dr. Sugarbaker hinged on a lack of relevant information regarding the reasons underlying the precautionary suspension. (See Appellant's Adden. at 28.) Consequently, the Ad Hoc Committee's recommendation did not vindicate Dr. Sugarbaker in the medical sense. In fact, the Ad Hoc Committee's recommendation did

12

not specifically address any of the health care quality issues underlying the precautionary suspension.

Dr. Sugarbaker next argues that the Executive Committee's determinations were not objectively reasonable because several members of that committee were allegedly Dr. Sugarbaker's economic competitors. Dr. Sugarbaker, however, waived this issue by failing to lodge a timely objection to the participation of any particular Executive Committee member.[5] See Bryan, 33 F.3d at 1336. Cf. Mathews, 87 F.3d at 637 (noting that "[t]he Act contains no provision barring competitors from participating in 'professional review activities'").

Next, Dr. Sugarbaker points to the affidavit of Dr. Carl Doerhoff, an independent surgeon, which stated that the peer reviewers could not have entertained doubts as to the quality of Dr. Sugarbaker's care. This evidence, however, is irrelevant to our objective inquiry. Our focus is on the reasonableness of the peer reviewer's belief that they were furthering quality health care. "[T]he Act does not require that the professional review result in an actual improvement of the quality of health care." Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1030 (4th Cir. 1994). "[Dr. Sugarbaker's] showing 'that [the] doctors reached an incorrect conclusion on a particular medical issue because of a lack of understanding' does not 'meet the burden of contradicting the existence of a reasonable belief that they were furthering health care quality . . . .'" Brader, 167 F.3d at 843 (quoting Imperial, 37 F.3d at 1030).

---

[5] In his reply brief, Dr. Sugarbaker asserts that he had "repeatedly objected to direct economic competitors who sat on various committees during the peer review process (R. 2197-98)." (Appellant's Reply Br. at 18.) We have carefully reviewed the portions of the record referred to by Dr. Sugarbaker, and we find no indication that Dr. Sugarbaker ever raised a timely objection with respect to the participation of any member of the Executive Committee. He objected to the participation of certain members of the Ad Hoc Committee, the committee he now claims vindicated him.

Finally, to the extent Dr. Sugarbaker's case relies on inferences of a conspiracy to oust him, we conclude that such inferences do not create any genuine issues of fact in this case. In the HCQIA immunity context, the circuits that have considered the issue all agree that the subjective bias or bad faith motives of the peer reviewers is irrelevant. See, e.g., Brader, 167 F.3d at 840; Mathews, 87 F.3d at 635; Bryan, 33 F.3d at 1335; Austin, 979 F.2d at 734. We agree with the views of our sister circuits and now hold that bad faith on the part of the reviewers is irrelevant to the objective inquiry under 42 U.S.C. § 11112(a). Moreover, Dr. Sugarbaker has produced no hard evidence of any conspiracy, and the Appellate Review Committee concluded that no such conspiracy existed. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (noting that a plaintiff may not rest on mere allegations to withstand a motion for summary judgment).

In sum, Dr. Sugarbaker failed to produce sufficient relevant evidence to rebut the presumption that St. Marys restricted his privileges in the reasonable belief that the action was in furtherance of health care quality. St. Marys could have reasonably concluded that by taking action, it was safeguarding and furthering the health care interests of its patients.

2.    *Reasonable Fact Gathering — Section 11112(a)(2)*

In order to qualify for HCQIA immunity, St. Marys must have made a reasonable effort to obtain the relevant facts. See 42 U.S.C. § 11112(a)(2). In assessing this issue, we consider "whether the totality of the process leading up to the Board's 'professional review action' . . . [evinces] a reasonable effort to obtain the facts of the matter." Mathews, 87 F.3d at 637. See also Brader, 167 F.3d at 841.

St. Marys subjected its concerns regarding Dr. Sugarbaker to an exhaustive review process, including expert retrospective reviews and multiple fact-finding hearings during which Dr. Sugarbaker was permitted extensive trial-type rights. Moreover, St. Marys

conducted an exhaustive appellate-level review during which Dr. Sugarbaker was again given extensive rights.

Notwithstanding the processes employed by St. Marys, Dr. Sugarbaker argues that certain alleged deficiencies undermine the reasonableness of the fact gathering process in his case. We have carefully reviewed Dr. Sugarbaker's arguments and the record, and we find no merit in any of his contentions. We agree with the view expressed by the district court; "[i]f [St. Marys] did nothing else, it undertook a thorough investigation of the facts." (Appellant's Adden. at 9.)

### 3. *Adequate Notice and Hearing Procedures — Section 11112(a)(3)*

The failure to provide a physician with adequate notice and fair procedures precludes immunity under the HCQIA. See 42 U.S.C. § 11112(a)(3). Dr. Sugarbaker asserts that evidence of alleged bias, ex parte communications, insufficient notice of issues, and an inadequate investigation rebut the presumption that St. Marys provided adequate notice and due process in this case. Dr. Sugarbaker's arguments in this regard are largely disjointed, conclusory, and sometimes confusing. He waived his complaint that bias tainted his hearing before the Executive Committee by failing to make "contemporaneous objections to the manner in which the hearing procedures were conducted." Bryan, 33 F.3d at 1336. Further, his assertion that an insufficient investigation resulted in an unfair hearing is, as demonstrated above, unsupported by any substantive analysis.

Dr. Sugarbaker argues that an alleged "shared counsel" arrangement between the Appellate Review Committee and the Executive Committee could reasonably be viewed as allowing improper ex parte contacts that undermined the fairness of the hearing procedures in his case. Kathleen Boozang represented the Appellate Review Committee. Ms. Boozang is a law professor at Seton Hall University School of Law. She is also "of counsel" with the same law firm, Greensfelder, Hemker & Gale, P.C., that represented

15

St. Marys throughout the peer review process and this lawsuit. At the Appellate Review Committee hearing, Ms. Boozang introduced herself and her affiliation with the Greensfelder firm, but Dr. Sugarbaker failed to object to her participation until well after the hearing. Consequently, even if we assume that Ms. Boozang's participation was improper, it appears that Dr. Sugarbaker has waived this issue. See Bryan, 33 F.3d at 1336. In view of Dr. Sugarbaker's failure to timely object to Ms. Boozang's participation, and the fact that St. Marys provided Dr. Sugarbaker with multiple levels of review, we conclude that the potential for ex parte contacts in one phase of the peer review process does not detract from the overall fairness of the procedures employed in this case.[6]

Dr. Sugarbaker also argues that he was afforded insufficient notice of St. Marys' concerns. Specifically, Dr. Sugarbaker contends that he was deprived of "a fair hearing due to the continually changing charges brought against him." (Appellant's Br. at 47.) We disagree. The fact that the peer reviewers' concerns shifted as the investigation continued does not alone undermine the fairness of the procedures employed. During each phase of the peer review process, St. Marys notified Dr. Sugarbaker of his procedural rights under the hospital's bylaws. Before each hearing, St. Marys notified Dr. Sugarbaker of its concerns.

Despite his contention that the changing charges resulted in an unfair hearing, Dr. Sugarbaker points to only one specific instance when he was confronted with a medical issue for which he was not given specific, prior notice. During the hearing before the Executive Committee, one of the committee members raised concerns regarding patient feeding in a colectomy case. Prior to this time, the peer reviewer's concern with respect

---

[6] Dr. Sugarbaker would also be hard pressed to show meaningful prejudice attributable to Ms. Boozang's participation. The Appellate Review Committee rejected the Executive Committee's recommendation that St. Marys completely terminate Dr. Sugarbaker's privileges.

to the colectomy case had focused on Dr. Sugarbaker's possibly dangerous delay in initiating the operation. On our review of the record, however, it is clear that the questions posed with respect to patient feeding were logically related to the committee's previously identified concerns. For example, in his defense, Dr. Sugarbaker referred to literature that arguably supported nonoperative management of similar cases with antibiotics and nutrition. (See J.A. at 622.) Dr. Sugarbaker also presented the testimony of an expert witness to support his contention that he managed the case appropriately. (See id. at 642.) A member of the Executive Committee asked this expert about the proper nutritional management of patients in similar circumstances. (See id. at 646.) The expert's response called into question Dr. Sugarbaker's care with respect to feeding this patient. In view of the foregoing, we cannot say that the Executive Committee's concern regarding the patient feeding issue was not so unexpected that it detracted from the fairness of the process employed in this case. In any event, Dr. Sugarbaker had the opportunity to respond to this matter when he presented his case to the Appellate Review Committee. (See, e.g., id. at 782.)

In summary, we conclude that Dr. Sugarbaker has failed to present sufficient evidence to rebut the presumption that St. Marys complied with section 11112(a)(3).

### 4. *Reasonable Belief that the Action was Necessary — Section 11112(a)(4)*

The final inquiry under section 11112(a) is whether St. Marys undertook the professional review action "in the reasonable belief that the action was warranted by the facts known after [a] reasonable effort to obtain facts" and after providing adequate notice and hearing procedures. 42 U.S.C. § 11112(a)(4). "Our analysis under § 11112(a)(4) closely tracks our analysis under § 11112(a)(1)." Brader, 167 F.3d at 843.

Dr. Sugarbaker's arguments regarding this fourth inquiry are brief and conclusory. He contends that the opinions of several independent surgeons rebut the statutory presumption favoring St. Marys, and establish a genuine issue of fact precluding

17

summary judgment. To the extent Dr. Sugarbaker offers expert testimony to cast doubt upon the correctness of the medical determinations underlying St. Marys' actions, such matters are of only marginal relevance to our objective inquiry.

> Although not every panel [involved in the multi-step review process] reached identical conclusions about the necessity of suspending [Dr. Sugarbaker's] privileges, a plaintiff's showing "that [the] doctors reached an incorrect conclusion on a particular medical issue because of a lack of understanding" does not "meet the burden of contradicting the existence of a reasonable belief that they were furthering health care quality in participating in the peer review process."

Brader, 167 F.3d at 843 (quoting Imperial, 37 F.3d at 1030).

Moreover, with respect to any expert opinions Dr. Sugarbaker prepared for litigation in court,[7] those opinions "do not rebut the presumption that the Board made its decision in the reasonable belief that it was warranted by the facts known." Mathews, 87 F.3d at 638. The conclusions of these experts "were not among 'the facts known' at the time of the professional review action." Id.

Dr. Sugarbaker failed to present sufficient evidence to rebut the presumption that St. Marys has complied with the requirements of 42 U.S.C. § 11112(a)(4).

B.     Committee Action Versus Hospital Action

Dr. Sugarbaker argues that even if St. Marys enjoys HCQIA immunity for the Board's decision to restrict his privileges, the statute provides no immunity for the actions of St. Marys' peer review committees. Therefore, according to Dr. Sugarbaker, St.

---

[7] On this issue, Dr. Sugarbaker's brief does not indicate which expert's opinions, if any, were available to the SSM Board or any of the peer review participants. (See Appellant's Br. at 48-49.)

Marys remains vicariously liable for the allegedly improper precautionary summary suspension.

As an initial matter, we reject Dr. Sugarbaker's premise that the precautionary suspension was improper. St. Marys' Medical Staff Bylaws permit the Executive Committee to impose a precautionary summary suspension of "all or a portion of the admitting or clinical privileges of a Practitioner if necessary to the best interests of patient care." (J.A. at 229.) In this case, the Executive Committee imposed the precautionary suspension only after the Surgery Review Committee's review of 24 of Dr. Sugarbaker's surgical cases raised concerns with respect to Dr. Sugarbaker's practice. (See id. at 279, 293.) Furthermore, under the HCQIA's emergency provisions, summary suspensions, "subject to subsequent notice and hearing or other adequate procedures," do not result in the loss of immunity "where the failure to take such an action may result in an imminent danger to the health of any individual." 42 U.S.C. § 11112(c)(2). In a footnote, Dr. Sugarbaker contends that St. Marys and the Executive Committee are not entitled to the protections of section 11112(c)(2) because Dr. Sugarbaker had no patients admitted to St. Marys at the time the Executive Committee imposed the precautionary suspension. (See Appellant's Br. at 50 n.10.) We see no reason to limit the HCQIA emergency provisions to situations in which there is a currently identifiable patient whose health may be jeopardized. "[T]he [HCQIA] does not require imminent danger to exist before a summary restraint is imposed. It only requires that the danger may result if the restraint is not imposed." Fobbs v. Holy Cross Health Sys. Corp, 29 F.3d 1439, 1443 (9th Cir. 1994), cert. denied, 513 U.S. 1127 (1995).

We also reject Dr. Sugarbaker's rather tortured interpretation of the HCQIA. Dr. Sugarbaker selectively cites portions of various subsections of the HCQIA to create a patchwork argument that only hospitals, not committees or medical staff, can implement professional review actions, and therefore, HCQIA immunity applies only to actions taken by hospitals and not actions taken by committees. Thus, according to Dr.

Sugarbaker, St. Marys cannot qualify for immunity for the actions of the Executive Committee.

Even assuming arguendo that Dr. Sugarbaker has uncovered a statutory anomaly whereby the various definitions contained in the HCQIA do not dovetail perfectly together, we are persuaded that Dr. Sugarbaker's selective reading of the statute cannot stand because it would undermine Congress's clear intent in enacting the statute. When the HCQIA is viewed as a whole, there is no doubt that Congress intended to improve the quality of our nation's health care by encouraging professional self-regulation. See 42 U.S.C. § 11101; Addis v. Holy Cross Health Sys. Corp., 88 F.3d 482, 485 (7th Cir. 1996) (discussing the HCQIA's package of incentives and disincentives that are designed to further self-regulation in the medical profession). Accepting Dr. Sugarbaker's asserted statutory construction would seriously undermine Congress's intent. If hospitals such as St. Marys could never receive immunity for the actions taken by their peer review committees, there would be a gaping hole in the HCQIA's protective scheme. Such a situation would discourage peer review activities and hamper the medical profession's self-regulation efforts.

C.    Summary — HCQIA Immunity

We hold that Dr. Sugarbaker has failed to satisfy his burden of producing sufficient relevant evidence that would allow a reasonable jury to conclude by a preponderance of the evidence that St. Marys is not entitled to statutory immunity under the HCQIA.

**IV. Dr. Sugarbaker's Claim for Injunctive Relief**

HCQIA immunity is limited to suits for damages; there is no immunity from suits seeking injunctive or declaratory relief. See 42 U.S.C. § 11111(a)(1); Imperial, 37 F.3d at 1031. Dr. Sugarbaker's first amended complaint included a prayer for injunctive relief

that he now contends survived summary judgment.[8]  Dr. Sugarbaker argues, therefore, that his claim for injunctive relief survives even if St. Marys is entitled to HCQIA immunity with respect to his damages claims.  St. Marys contends, however, that Dr. Sugarbaker has waived or otherwise abandoned his right to seek injunctive relief in this case.

In Imperial, the Fourth Circuit held that because the physician/plaintiff had abandoned his prayer for injunctive relief before the district court, the appeals court would not reinstate the claim.  See 37 F.3d at 1031.  The court considered the fact that the physician filed no motion for injunctive relief, and failed to press the issue when "the vitality of the complaint, in its entirety, was put to the test on an immunity defense."  Id.  In short, the physician "made no overture to the district court to suggest that he had a continuing interest in pursuing injunctive relief which would survive the immunity defense."  Id.

Dr. Sugarbaker's case is almost indistinguishable from Imperial in this regard.  Dr. Sugarbaker never actively pursued any injunctive relief before the district court.  He

_____

[8] This argument calls into question our jurisdiction to consider these appeals. See In re Grand Jury Subpoenas Duces Tecum, 85 F.3d 372, 374 (8th Cir. 1996) ("It is the duty of the Court of Appeals to satisfy itself as to its jurisdiction to consider an appeal . . . .") (internal quotation omitted).  If the district court did not dispose of all of Dr. Sugarbaker's claims, there has been no final order, and consequently, there is no appellate jurisdiction.  See id.; 28 U.S.C. § 1291 (1994).  The district court did not expressly grant summary judgment in favor of St. Marys with respect to Dr. Sugarbaker's claim for injunctive relief.  Further, neither the district court's order nor the clerk's judgment expressly states that the court intended to dispose of the entire case when it granted St. Marys' motion for immunity under the HCQIA.  On the other hand, the court denied as moot St. Marys' motion for summary judgment on the merits, and the district court's docket sheet indicates that the court's decision terminated the case.  (See J.A. at 14.)  Thus, we are satisfied that the district court's order was indeed final, and we have jurisdiction to consider the present appeals.

never moved for an injunction, and after the district court entered its judgment on St. Marys' HCQIA motion, Dr. Sugarbaker did not seek to clarify the status of his prayer for injunctive relief. In short, like the physician in <u>Imperial</u>, Dr. Sugarbaker never indicated to the district court that he had a "continuing interest in pursuing injunctive relief." <u>Imperial</u>, 37 F.3d at 1031. Therefore, we hold that Dr. Sugarbaker has abandoned his prayer for injunctive relief.

## V. Conclusion

In summary, we hold that the district court did not improperly grant summary judgment on the basis of an unauthenticated record. We further hold that Dr. Sugarbaker failed to present sufficient evidence to rebut the presumption that St. Marys is entitled to immunity under the HCQIA, and that St. Marys is also entitled to immunity for the actions taken by its peer review committees. Finally, we hold that Dr. Sugarbaker has abandoned his prayer for injunctive relief. In view of our decision on Dr. Sugarbaker's appeal, we do not reach the merits of St. Marys' cross-appeal.

The district court's judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

22