Keshav JOSHI, M.D., Appellant/Cross–
Respondent,

v.

ST. LUKE'S EPISCOPAL–PRESBYTE-
RIAN HOSPITAL, St. Luke's Hospi-
tal, St. Luke's Health Corporation,
Mohammed Bashiti, M.D. and George
Tucker, M.D., Respondents/Cross–Ap-
pellants.

No. ED 83566.

Missouri Court of Appeals,
Eastern District,
Division One.

July 13, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 17, 2004.

Application for Transfer Denied
Sept. 28, 2004.

James R. Dowd, Dowd & Dowd, St. Louis, MO, Naren Chaganti, Law Offices of Naren Chaganti, Los Angeles, CA, for Appellant/Cross–Respondent.

Richard A. Wunderlich, Sandra F. Sperino, Lewis, Rice & Fingersh, L.C., St. Louis, MO, for Respondents/Cross–Appellants.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Keshav Joshi, M.D. ("Plaintiff") appeals the summary judgment entered by the Circuit Court of St. Louis County in favor of respondents, St. Luke's Episcopal–Presbyterian Hospital, St. Luke's Hospital, St. Luke's Health Corporation, Mohammed Bashiti, M.D., and George Tucker, M.D. (collectively, "defen-

dants," individually, "St. Luke's," "Dr. Bashiti," and "Dr. Tucker"). Plaintiff brought suit against defendants for tortious interference with contractual relations, breach of good faith and fair dealing and sought declatory and injunctive relief. Defendants cross-appeal the trial court's denial of their motion for attorney's fees. We affirm.[1]

Plaintiff worked for St. Luke's as an anesthesiologist from 1989 until 1996. During this entire time, Dr. Bashiti served as the Chief of the Department of Anesthesiology ("the Department") at the hospital. The Department utilized a monthly peer review process in which all of the physicians on the medical staff and the certified registered nurse anesthetists discussed problems with patient care. The Department used Clinical Quality Assurance Peer Review forms that included certain problem care indicators. Any person that detected a problem care indicator was to document the problem on the form. Dr. Bashiti and his assistant would then review the forms and decide which cases should be presented at the peer review committee meeting. From February of 1992 through the early part of 1995, six incidents involving plaintiff providing poor patient care were reviewed by the peer review committee.

In addition to the cases submitted to the peer review committee, numerous nurses filed complaints with Nurse Vicki Kinahan, the head nurse in the Post–Anesthesia Care Unit. In 1995, approximately seven reports were filed by nurses expressing concern about plaintiff's patient care. Nurse Kinahan prepared a written summary for each complaint, and then she reported each complaint to Dr. Bashiti. Dr. Bashiti also received complaints from two physicians concerning plaintiff's patient care.

On July 11, 1995, Nurse Kinahan and Dr. Bashiti met with Dr. William Owens, the former Chief of the Department of Anesthesiology at the Washington University School of Medicine, to discuss the complaints against plaintiff. The purpose of the meeting was to get an independent evaluation of plaintiff's performance. Dr. Owens reviewed the complaints against plaintiff and determined that plaintiff's patient care fell below the standard of care for anesthesiologists in the St. Louis metropolitan area and he recommended that Plaintiff receive additional anesthesia training.

Dr. Bashiti and Dr. Tucker, the President and Chief Executive Officer of St. Luke's, met with Plaintiff in October of 1995 to discuss Dr. Owens' conclusions and their overall concerns about Plaintiff's patient care. Plaintiff was informed that Dr. Owens believed his patient care was below standard and that he believed Plaintiff should receive additional training.

On November 7, 1995, Plaintiff was involved in another incident of poor patient care that was submitted to the peer review committee. Following this incident, Dr. Bashiti reviewed all of the complaints against Plaintiff from the peer review committee as well as the complaints submitted to Nurse Kinahan. Following his review, Dr. Bashiti recommended a summary suspension of Plaintiff's medical staff privileges because he believed Plaintiff posed an imminent threat to patients.

Dr. Bashiti and Dr. Tucker informed Plaintiff of his summary suspension on January 9, 1996. Plaintiff was told that the suspension was based on an investigation by Dr. Bashiti and was endorsed by the Medical Executive Committee of St. Luke's. On January 18, 1996, Dr. Tucker

1. Defendants' motion to dismiss for violations of Rule 84.04 is denied.

wrote a letter to Plaintiff restating that his medical privileges had been suspended. Dr. Tucker also informed Plaintiff that he had a right to request a preliminary hearing to determine whether the temporary suspension should be continued until a full hearing could be held.

On January 29, 1996, Plaintiff's attorney requested a preliminary hearing, and such was eventually set for February 7, 1996. Plaintiff's attorney requested that defendants provide him with the evidence used in support of the summary suspension. However, Plaintiff's attorney did not receive the evidence until the evening before the hearing. Kenneth Slavens, an attorney, served as the hearing officer at the preliminary hearing and three physicians at St. Luke's served as the hearing panel. The panel issued its decision on February 8, 1996 to continue the suspension of Plaintiff's privileges pending a full hearing.

On February 26, 1996, Plaintiff requested a full hearing. St. Luke's notified Plaintiff in March that the full hearing was set for May 31, 1996. On May 17, 1996, Plaintiff tendered his resignation to St. Luke's, in which he stated he was "resigning in order to proceed with a program of employment and professional development at the University of Missouri. . . ." That same day, Plaintiff's attorney sent a letter to defendant's attorney stating that there was no longer a reason to have the full hearing.

Plaintiff filed suit seeking damages and injunctive and declaratory relief against defendants. Defendants moved for summary judgment, arguing that they were entitled to immunity under the Health Care Quality Improvement Act of 1986, 42 U.S.C. section 11111 ("the Act"). In support of their motion for summary judgment, defendants filed affidavits, depositions, exhibits including St. Luke's by-laws, and numerous other documents.

Plaintiff then filed a response to the motion for summary judgment. Plaintiff argued, in part, that he was suspended because he attempted to organize a collective bargaining group called Comprehensive Anesthesia Care. Plaintiff stated that Dr. Bashiti assigned all of the low-risk cases to himself and assigned all of the high-risk cases to Plaintiff and the other anesthesiologists at St. Luke's. The purpose of Comprehensive Anesthesia Care was to develop a more equitable distribution of the work for the anesthesiologists.

In support of his response to defendant's motion for summary judgment, plaintiff also filed numerous depositions, affidavits, and exhibits.

The trial court granted defendant's motion for summary judgment, finding that defendant's were entitled to immunity under the Act. Defendants then made a motion for attorney's fees, which the trial court denied. Plaintiff appeals and defendants cross-appeal.

The standard of review of a summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We "review the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* at 376. "The facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Among the ways a "defending party" may establish a right to summary judgment is by showing there is no genuine dispute as to the existence of each of the facts necessary to support a properly-pleaded affirmative defense. *Id.* at 381.

The statutory presumptions in the Act create an "unconventional twist" in our summary judgment review. 42 U.S.C. section 11112(a), *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 912 (8th Cir.1999). It is presumed that a professional review action meets the standards in the Act "unless the presumption is rebutted by a preponderance of the evidence." *Wayne v. Genesis Medical Center*, 140 F.3d 1145, 1148 (8th Cir.1998). Thus, on our review of the trial court's grant of summary judgment, we must determine whether a reasonable jury could have determined that Plaintiff produced sufficient evidence to show that defendants failed to meet the standards of the Act. *Sugarbaker*, 190 F.3d at 912.

First, we will address Plaintiff's motion to transfer this case to the Missouri Supreme Court and Plaintiff's eighth, ninth, and tenth points on appeal. In his motion to transfer, Plaintiff argues that we must transfer the case because he claims the Act is unconstitutional. In his eighth point on appeal, Plaintiff argues that the Act violates both the United States Constitution and the Missouri Constitution because it deprives physicians of the right to a jury trial. In his ninth point on appeal, Plaintiff argues the Act is unconstitutional because it "delegates to and vests in a hospital plenary power to deprive a physician's property interests." In his tenth point on appeal, plaintiff argues the Act is unconstitutional "because it encroaches on sovereign state power to regulate the medical profession," and Congress cannot immunize defendants from state causes of action.

The Missouri Supreme Court is vested with exclusive jurisdiction of all cases involving the validity of a federal statute. Mo. Const. Art.V, Sec. 3. However, the mere assertion that a statute is unconstitutional does not deprive this court of jurisdiction. *Wright v. Missouri Dept. of Social Services*, 25 S.W.3d 525, 528 (Mo.App. W.D.2000). First, if the constitutional challenge has not been properly preserved for appellate review, jurisdiction remains with this court. *State v. Bowens*, 964 S.W.2d 232, 236 (Mo.App. E.D.1998). A constitutional challenge is waived if not raised at the earliest opportunity. *Id.* Second, the constitutional challenge must be real and substantial for jurisdiction to vest in the Supreme Court. *Rodriquez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 51 (Mo. banc 1999). If the challenge is merely colorable, this court maintains jurisdiction. *Id.*

In this case, Plaintiff did not raise any of his constitutional issues before the trial court. Therefore, his constitutional challenges are deemed waived and this court maintains jurisdiction. We need not address whether any of Plaintiff's constitutional issues are real and substantial or are merely colorable. Accordingly, Plaintiff's motion to transfer to the Missouri Supreme Court is denied. Plaintiff's points eight, nine, and ten are all denied as well.

In his second point on appeal,[2] Plaintiff argues that the trial court erred in entering summary judgment because none of the evidence upon which the trial court relied was admissible. After a review of the record before us, we find that Plaintiff failed to raise the issues presented in this point in the trial court. Plaintiff cannot make this argument for the first time on appeal. *D.E. Properties v. Food for Less*, 859 S.W.2d 197, 201 (Mo.App. E.D.1993). Point denied.

Plaintiff's remaining points on appeal all concern whether defendants were

---

**2.** Plaintiff's first point on appeal concerns the standard of review.

entitled to immunity under the Act.[3]

■ "Congress passed the Act to 'improve the quality of medical care by encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior.'" *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 632 (3rd.Cir.1996) (quoting H.R.Rep. No. 903, 99th Cong., 2d Sess. 2 (1986)). "If a professional review action ... of a professional review body meets all the standards specified [in the Act] ..." then the professional review body and all who work with or in association with the body "shall not be liable in damages under any law of the United States or of any State ... with respect to the action." 42 U.S.C. section 11111(A)(1).

For the protections in the Act to apply, the professional review action must be taken:

(1) in the reasonable belief that the action was in furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection [of the Act] unless the presumption is rebutted by a preponderance

of the evidence. 42 U.S.C. section 11112(a).

The term 'professional review action' means an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.... 42 U.S.C. section 11151(9).

The term 'professional review activity' means an activity of a health care entity with respect to an individual physician—

(A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity,

(B) to determine the scope or conditions of such privileges or membership, or

(C) to change or modify such privileges or membership. *Id.* at 11159(10).

The term 'professional review body' means a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity. *Id.* at 11159(11).

---

**3.** We note that Plaintiff's attorney raised several issues of alleged error at oral argument that he did not brief. We will not consider the arguments that were not contained in his brief.

In his third point on appeal, Plaintiff argues that the trial court erred in granting summary judgment because defendants did not meet their burden under the Act because Dr. Bashiti acted alone and he did not constitute a "professional review body" as defined by the Act.[4]

■ Plaintiff argues that Bashiti essentially unilaterally decided to suspend his medical privileges. Plaintiff then argues that Bashiti was not a professional review body, and therefore the suspension was not a professional review action. However, the evidence demonstrates that Dr. Bashiti did not act unilaterally in suspending Plaintiff. First, Dr. Bashiti, working in his capacity as the Chief of the Department, reviewed the cases submitted to the peer review committee. Second, Dr. Bashiti worked with Nurse Kinahan to review the complaints made by other nurses against Plaintiff. Third, Dr. Bashiti fielded complaints from at least two doctors concerning Plaintiff's level of patient care. Fourth, Dr. Bashiti consulted with Dr. Owens to get an independent evaluation of Plaintiff's performance. Finally, the Medical Executive Committee of St. Luke's endorsed the summary suspension of Plaintiff's privileges.

Therefore we find that Dr. Bashiti did not act unilaterally in suspending Plaintiff. Rather, the suspension was the work of a proper "professional review body" pursuant to the Act. Point denied.

In his fourth point, Plaintiff argues the trial court erred when it ruled that defendants made a reasonable effort to find the facts of the matter, as required by the Act.

■ To determine whether defendants made a reasonable effort to find the facts of the matter, we look at the totality of the process leading up to the professional review action. *Sugarbaker*, 190 F.3d at 914. We find that the totality of defendants' efforts to find the facts concerning Plaintiff's patient care, as outlined above, was more than reasonable in this case. Point denied.

Plaintiff argues in his fifth point that defendants did not provide reasonable notice and an opportunity for a hearing, as required by the Act.

Plaintiff's arguments are misplaced. His original summary suspension was for a period of fourteen days, as permitted by 42 U.S.C. section 11112(c)(1)(B). The parties were unable to resolve the pending issues and complaints concerning Plaintiff's patient care within the fourteen days. Defendants then extended Plaintiff's suspension pending a full hearing. The Act specifically permits "an immediate suspension or restriction of clinical privileges ... where the failure to take such an action may result in an imminent danger to the health of any individual." 42 U.S.C. section 11112(c)(2). Defendants possessed ample evidence to conclude that Plaintiff's patient care posed an imminent danger to the health of patients.

Plaintiff further argues that he was denied a full and fair hearing at the preliminary hearing on February 7, 1996. However, the preliminary hearing was authorized by St. Luke's by-laws and was not mandated by the Act. A full hearing was scheduled by the parties for May 31, 1996. Plaintiff would have had his full hearing and he would have had the opportunity to present his evidence at that hearing. The full hearing never occurred because Plaintiff resigned on May 17, 1996 to take another position. Plaintiff's attorney sent a letter to defendant's attorney specifically stating that there was no reason to proceed with the full hear-

---

4. Defendants argue that Plaintiff did not pre-serve this issue. We disagree.

ing. It is disingenuous, at best, for Plaintiff to now argue on appeal that he was denied a full hearing when he resigned before the scheduled hearing and expressly stated there was no longer a reason to proceed with the full hearing. Point denied.

Plaintiff argues in his sixth point that his suspension was not an action taken in the reasonable belief that the suspension was warranted. Plaintiff argues that the professional review action taken against him was not warranted by the facts of this case.

However, the numerous complaints concerning Plaintiff's patient care, along with Dr. Owens' report, demonstrate that the suspension was based on a reasonable belief that such action was necessary. Point denied.

In his seventh point on appeal, Plaintiff argues the trial court erred because his suspension was in retaliation to his attempt to organize a collective bargaining group.

Ours is an objective inquiry focusing on the reasonableness of the belief that defendants were furthering quality health care in their action. *Sugarbaker,* 190 F.3d at 914. The "subjective bias or bad faith motives" of defendants is irrelevant. *Id.* We have already found that defendants had a reasonable belief that the suspension of Plaintiff furthered quality health care. Point denied.

In their cross-appeal, defendants argue that the trial court erred in denying their motion for attorneys' fees because Plaintiff's claims were frivolous, unreasonable, without foundation, and in bad faith. The trial court's decision concerning attorneys' fees is reviewed for an abuse of discretion. *Smith v. Ricks,* 31 F.3d 1478, 1487 (9th Cir.1994). We find the trial

court did not abuse its discretion. Point denied.

Based on the foregoing, the judgment of the trial court is affirmed.

GLENN A. NORTON, J. and PATRICIA L. COHEN, J., concur.