MEIERHENRY, Justice
(concurring specially).
[¶ 36.] I concur and write to clarify the term “clinical privileges” as defined in the Health Care Quality Improvement Act (HCQIA). Pursuant to the HCQIA, Congress has granted immunity to participants engaged in professional review actions. Sugarbaker v. SSM Health Care, 190 F.3d 905, 911 (8th Cir.1999). Whether an action is a “professional review action” necessarily requires the action to adversely affect “clinical privileges.” Mathews v. Lancaster General Hospital, 87 F.3d 624, 633 (3d Cir.1996). “Professional review action” is defined as:
An action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician ... and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician.
42 U.S.C.A. § 11151(9) (emphasis added). “The definition of ‘professional review action’ encompasses decisions or recommendations by peer review bodies that directly curtail a physician’s clinical privileges or impose some lesser sanction that may eventually affect a physician’s privileges.” Mathews, 87 F.3d at 634. “Clinical privileges” is specifically defined by 42 U.S.C.A. § 11151(3) as follows:
The term “clinical privileges” includes privileges, membership on the medical staff, and the other circumstances pertaining to the furnishing of medical care under which a physician or other licensed health care practitioner is permitted to furnish such care by a health care entity.
[IT 37.] On the morning of August 19, 2003, an informal group of doctors met to determine if Wojewski was able to perform a surgery he had scheduled. The majority concludes that the doctors who informally met that morning were immune from lia *638 bility because they were engaged in professional review activities related to ... revoking Wojewski’s surgical privileges. See supra, ¶24. This conclusion overstates what actually occurred. The doctors only met to decide whether Wojewski was capable of doing surgery that morning. The doctors decided he was and took no further action. It was not until after the Fair Hearing Panel conducted a hearing that Wojewski’s clinical privileges were directly curtailed. The doctors’ informal meeting conforms to the definition of investigatory action to assist the review process, thus still protected by HCQIA. Austin v. McNamara, 979 F.2d 728, 736-38 (9th Cir.1992) (holding that the actual decision to suspend privileges and the investigatory process leading up to that decision were immune under HCQIA); 42 U.S.C.A. § 11151(10) (defining professional review activity). Although the outcome of this case does not rest on the definition of “clinical privileges,” we must be mindful of the breadth we give this term for future claims brought under HCQIA.[12]

. While the term "clinical privileges" as used in 42 U.S.C.A. 11151(3) has not been interpreted by courts, cases analyzing whether an action by a health care entity constitutes a "professional review action” generally involve the revocation of all clinical privileges for a certain period of time rather than a decision to prevent a medical professional from performing one isolated act or duty. See Gordon v. Lewistown Hospital, 423 F.3d 184 (3d Cir.2005) (reviewing suspension of ophthalmologist's medical-dental staff privileges); Gabaldoni v. Washington County Hospital Association, 250 F.3d 255 (4th Cir.2001) (reviewing termination of obstetrician whose clinical privileges were terminated); Mathews, 87 F.3d 624 (stating that no professional review action occurred until the board voted to suspend doctor’s privileges) citing Austin, 979 F.2d 728 (determining that "action” had not been taken until a professional review body limited his clinical privileges).