JOHN F. MCLEAY, M.D., APPELLANT AND CROSS-APPELLEE,
v. BERGAN MERCY HEALTH SYSTEMS CORP., DOING
BUSINESS AS BERGAN MERCY MEDICAL CENTER,
APPELLEE AND CROSS-APPELLANT.

714 N.W.2d 7

Filed May 19, 2006.    No. S-04-117.

David S. Houghton, J.P. Sam King, and Robert W. Mullin, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellant.

P. Shawn McCann, of Sodoro, Daly & Sodoro, P.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

CONNOLLY, J.

John F. McLeay, M.D., sued Bergan Mercy Health Systems Corp. (Bergan) after a peer review board suspended his privileges. The district court granted Bergan's motion for summary judgment, determining that Bergan was immune from liability under the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. § 11101 et seq. (2000). We reversed in part and affirmed in part, because Bergan failed to show that the presumption applied. *McLeay v. Bergan Mercy Health Sys.*, 270 Neb. 693, 708 N.W.2d 592 (2005). Bergan moved for rehearing, which we granted, and we ordered the appeal to be reargued.

We now withdraw our original opinion in *McLeay* and substitute this opinion in which we determine that Bergan, in its review of McLeay's performance, acted with a reasonable belief that it was promoting quality care. Therefore, McLeay's actions for damages are immune under the HCQIA. His request for reinstatement, however, is not subject to HCQIA immunity, and

we remand the cause for a determination whether there is an issue of material fact, whether McLeay waived his claim for reinstatement, and whether he is entitled to reinstatement. Accordingly, we affirm in part, and in part reverse and remand for further proceedings.

## BACKGROUND

Bergan suspended McLeay's surgical privileges. McLeay filed an action seeking damages and reinstatement that resulted in a jury award of $451,000. Bergan appealed. The Nebraska Court of Appeals reversed and ordered a new trial. In its opinion, the court stated that although it did not decide the issue, the facts were such that the immunity provisions of the HCQIA were likely "implicated in a substantial way." *McLeay v. Bergan Mercy Health Sys.*, No. A-99-474, 2001 WL 185263 at *6 (Neb. App. Feb. 27, 2001) (not designated for permanent publication). McLeay then filed a new petition seeking damages and reinstatement for breach of contract, fraudulent representation, fraudulent concealment, mutual mistake, and defamation, relating to the suspension of his surgical privileges and Bergan's filing of reports to the National Practitioner Data Bank (NPDB). A portion of the defamation cause of action was dismissed based on the statute of limitations.

Bergan filed an answer alleging that McLeay waived claims by failing to exhaust administrative remedies. It also alleged that it was immune from liability for its actions under the HCQIA and moved for summary judgment.

Evidence presented at the summary judgment hearing consisted of the record from the first trial. The record shows that in 1992, McLeay was informed by letter that because of concerns about the quality of care he provided, he would be monitored during certain surgical procedures. McLeay met with an ad hoc committee and entered an agreement for monitoring. McLeay disputed some terms of the agreement, but he signed the ad hoc committee meeting minutes stating that he accepted and agreed to them.

In January 1993, McLeay's privileges were further restricted. Minutes from a meeting of the ad hoc review committee that considered the matter stated:

The members reviewed all of the information made available to the Committee through its investigative process. It was determined significant evidence was present in order to justify a recommendation for action. This evidence included two concern reports from nursing staff on the floors, two concern reports from nursing staff in the Surgery department, two concern reports from Anesthesiologists, and a number of cases identified as having inappropriate or substandard care.

Bergan filed a report with the NPDB. McLeay filed a response stating that the report was incorrect.

In December 1993, McLeay wrote a letter requesting reinstatement and acknowledged that "1992 was an aberration of my surgical care" and stated that he had his " 'wake-up call.' " Bergan denied the request.

In 1994, Bergan notified McLeay of further specific concerns, and at McLeay's request, a hearing was scheduled. Bergen informed McLeay that it was concerned about his surgical judgment or techniques in eight cases. Bergan informed McLeay of a report from a monitoring physician concerning the care of three patients, an internal medicine physician's concerns about a patient, and documentation regarding two patients. Bergan's record numbers relating to the cases were listed in a letter sent to McLeay providing notice of a hearing on the matter. McLeay stated that he did not go back to Bergan to look at the records because he believed that it would not be allowed. He also stated, however, that he did not want to go back to Bergan. Bergan's president at the time testified that McLeay was never denied access to the records and could have viewed them.

According to Bergan, McLeay did not attend the hearing. Bergan then informed him that he was suspended. McLeay stated that there was a "meeting" or "hearing" on the matter. The record shows that McLeay was informed of his right to a hearing before the medical executive committee and that he requested one. Bergan scheduled a hearing, but then postponed it at McLeay's request, and it was never rescheduled. Bergan informed the NPDB of the suspension in a report that stated that McLeay was summarily suspended for incompetence, negligence, and malpractice. McLeay filed statements disputing the

accuracy of the report and stated that it was false, but did not provide any details.

According to McLeay, the committee's actions came without warning and surprised him. He stated that before receiving the letters from the committee, Bergan had not discussed with him the issues regarding his patients. He disputes that he acted negligently or incompetently when treating patients. He contends that he was deprived of a hearing at times, but the record as a whole shows that Bergan informed him of the review committee's actions. He spoke with members of the committee on several occasions, and he was afforded an opportunity for a hearing. Yet, McLeay conceded that he understood how the peer review process worked and that he knew he was entitled to a hearing.

Dr. Dwaine J. Peetz, Jr., who was chairman of the department of surgery during the time McLeay was suspended, described the peer review process that led to the suspension. According to Peetz, the outpatient surgical advisory committee initiated the peer review process by reporting an incident involving one or two patients. Regarding the suspension, Peetz explained that a summary suspension occurs only when the hospital and physicians are concerned that harm might come to patients.

The record does not contain specific information about the cases under review because the incidents reported to the committee were viewed as confidential. Although Peetz did not provide details of the cases that led to McLeay's suspension, he stated that two cases had caused concern within a short timeframe. According to Peetz, five to seven of the eight cases listed as being problematic involved "specialties" and had "significant concerns."

Dr. Richard J. Feldhaus, who was involved in the peer review process, testified about reports concerning the care of patients and that the surgery department believed the evidence justified a review. Feldhaus also testified that he was concerned about a case and that it was one of the eight cases that were listed when McLeay's privileges were suspended.

McLeay presented deposition testimony from two physicians. Dr. Anthony Pantano, a surgeon, testified that he had assisted McLeay in surgery and was familiar with the standard of care,

but did not provide details about the standard of care. Pantano was present at some of the cases used in the peer review and reviewed the file in others. He testified about seven of the eight cases and stated that McLeay acted "appropriately" and that he had no questions about McLeay's skills or judgment. He did not provide specifics about how the standard of care was met or what the standard of care was.

Dr. James A. Mailliard also testified. Mailliard did consultations with McLeay about patient care, but did not assist in surgery. Mailliard did not testify about the surgical standard of care. He did testify, however, that he reviewed the files in two of the eight cases and did not have any concern about McLeay's judgment, skills, or technique.

The court granted Bergan's motion for summary judgment, concluding there was no issue of material fact that disputed that the peer review action was taken in the reasonable belief that it was furthering quality care. Therefore, Bergan was immune from suit under the HCQIA. The court did not fully address whether McLeay had waived his claims by failing to reschedule a hearing concerning the revocation of privileges.

## ASSIGNMENTS OF ERROR

McLeay assigns, rephrased and consolidated, that the district court erred by (1) determining that Bergan was immune under the HCQIA; (2) failing to find that there were issues of material fact about the requirements to report and the falsity of the reports or malice in submitting them, which issues affected immunity; (3) failing to determine that immunity did not apply to equitable claims; and (4) determining that McLeay had waived his claims against Bergan. On cross-appeal, Bergan contends that allegations of defamation were barred by the statute of limitations.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005).

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Merz v. Seeba, ante* p. 117, 710 N.W.2d 91 (2006).

## ANALYSIS

### IMMUNITY

McLeay argues that Bergan was not acting within the scope of the HCQIA and was not entitled to immunity under it. According to McLeay, issues of material fact exist whether Bergan acted in the reasonable belief that its actions were in the furtherance of quality care and whether there were reasonable efforts to obtain the facts. Bergan, in its answer, alleges that its actions were a part of a professional review action that is entitled to immunity under the HCQIA.

■ Immunity under the HCQIA is a question of law that may be resolved whenever the record is sufficiently developed. See, e.g., *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994); *Meyer v. Sunrise Hosp.*, 117 Nev. 313, 22 P.3d 1142 (2001). " 'Congress passed the [HCQIA] to improve the quality of medical care by encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior.' " *Lee v. Trinity Lutheran Hosp.*, 408 F.3d 1064, 1070 (8th Cir. 2005). " 'Congress believed that effective peer review would be furthered by granting limited immunity from suits for money damages to participants in professional peer review actions.' " *Id.*

The HCQIA defines the term "professional review action" to mean

> an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges . . . of the physician.

42 U.S.C. § 11151(9). Under the HCQIA, a professional review body is cloaked with immunity from suits for damages:

If a professional review action (as defined in section 11151(9) of this title) of a professional review body meets all the standards specified in section 11112(a) of this title, except as provided in subsection (b) of this section—

(A) the professional review body,

(B) any person acting as a member or staff to the body,

(C) any person under a contract or other formal agreement with the body, and

(D) any person who participates with or assists the body with respect to the action,

shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action.

42 U.S.C. § 11111(a)(1).

Section 11112(a) of the HCQIA sets out the immunity standards. To be immune from suits for money damages, a professional peer review action must be taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

■ Further, the HCQIA creates a presumption that a professional review action meets the standards of the act "unless the presumption is rebutted by a preponderance of the evidence." § 11112(a). Accord *Sugarbaker v. SSM Health Care*, 190 F.3d 905 (8th Cir. 1999). See *Lee, supra.* Courts agree that the reasonableness requirements contained in § 11112(a) necessitate an objective inquiry. See, e.g., *Sugarbaker, supra.*

■ When discussing the presumption, courts have repeatedly commented on the interplay of the presumption and the summary judgment standard. Thus, courts have stated:

> "The statutory presumption included in section 11112(a) adds a rather unconventional twist to the burden of proof in our summary judgment standard of review, but the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."

*Lee v. Trinity Lutheran Hosp.*, 408 F.3d 1064, 1070 (8th Cir. 2005). Therefore, the courts ask, " 'Might a reasonable jury, viewing the facts in the best light for [the physician], conclude that [he or she] has shown, by a preponderance of the evidence, that [the hospital's] actions are outside the scope of [§ 1]1112(a)?' " *Lee*, 408 F.3d at 1070-71.

■ Stated differently, a court must determine whether the physician satisfied his or her burden of producing evidence that would allow a reasonable jury to conclude that the hospital's peer review process failed to meet the standards of the HCQIA. *Lee, supra.* See, *Brader v. Allegheny General Hosp.*, 167 F.3d 832 (3d Cir. 1999); *Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992); *Fox v. Parma Community Gen. Hosp.*, 160 Ohio App. 3d 409, 827 N.E.2d 787 (2005); *Manzetti v. Mercy Hosp. of Pittsburgh*, 741 A.2d 827 (Pa. Commw. 1999). The Nebraska Court of Appeals has addressed the matter, noting that the presumption means that the plaintiff bears the burden of proving that the review process was not reasonable. See, *Babcock v. Saint Francis Med. Ctr.*, 4 Neb. App. 362, 543 N.W.2d 749 (1996), citing *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994).

Here, McLeay argues that Bergan failed to present evidence that it was entitled to immunity. According to McLeay, Bergan failed to show any evidence of how McLeay failed to perform adequately and, thus, failed to meet an initial burden to show that the committee acted reasonably. McLeay also distinguishes the case law by pointing out that in most cases applying the presumption, the record contains detailed facts about the physician's errors or incompetence, while here, the record reflects no such details.

McLeay's argument fails for several reasons. First, the parties do not dispute that a peer review process was at issue. Under § 11112(a), once a peer review process is at issue, those participating in the process are presumed to be immune from damages

unless the plaintiff overcomes the presumption by showing that the factors in § 11112(a)(1) to (4) were not met. In addition, the plaintiff carries the burden of showing by a preponderance of the evidence that the peer review process was not reasonable.

Therefore, for Bergan to initially raise the issue that it was immune from liability, it would simply need to show that the dispute arose out of a professional review action. Issues concerning Bergan's reasonable belief that it was acting to further quality care and the other factors in § 11122(a)(1) to (4) are expressly presumed under the HCQIA.

That a professional review action was at play is undisputed. Accordingly, Bergan was presumed to be immune from actions for damages under the HCQIA unless McLeay satisfied his burden of producing evidence to allow a reasonable jury to conclude that the peer review process failed to meet the provisions of the HCQIA. See, e.g., *Lee, supra.*

### MCLEAY'S EVIDENCE TO REBUT PRESUMPTION

We next address whether McLeay presented evidence to rebut the presumption that would make summary judgment inappropriate.

One court described a factual challenge to the professional review action, stating that the facts would have to be " 'so obviously mistaken or inadequate as to make reliance on them unreasonable.' " *Meyers v. Columbia/HCA Healthcare Corp.,* 341 F.3d 461, 471 (6th Cir. 2003). Also, when reaching the determination, the court looks at the totality of the process leading up to the professional review action. *Joshi v. St. Luke's Episcopal,* 142 S.W.3d 862 (Mo. App. 2004).

Although McLeay alleges that he was not afforded adequate notice and hearing, the record does not support that assertion. Nor is there a meaningful dispute about a reasonable effort to obtain facts in the matter. Thus, we focus on the reasonable belief that the action was in the furtherance of quality care. McLeay contends that the testimonies of Pantano and Mailliard show that he acted competently and thus raise an issue of material fact whether Bergan had a reasonable belief that it was acting in the furtherance of quality care. He also argues the record reflects very little evidence about the eight cases that led to the termination of his privileges.

██ McLeay's argument falls short. Courts have overwhelmingly held that a physician's showing that the standard of care was met, or that the professional review board reached the wrong conclusion, does not meet the burden of overcoming the presumption of a reasonable belief that the hospital was furthering quality health care. See, *Lee v. Trinity Lutheran Hosp.*, 408 F.3d 1064 (8th Cir. 2005); *Meyers, supra*; *Brader v. Allegheny General Hosp.*, 167 F.3d 832 (3d Cir. 1999). The focus is on whether the hospital acted in a reasonable belief that it was furthering quality health care, with the information available to the professional review board when it acted, and if the reviewers would have reasonably concluded that their actions would restrict incompetent behavior or protect patients at that time. See, generally, *id.*

Only one court has held that expert testimony about the standard of care could be used to rebut the presumption. *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324 (10th Cir. 1996). There, the expert testified not only about the standard of care, but stated that the review panel reviewed only two charts before revoking privileges, which was unreasonably narrow at that time. *Brown* has been distinguished by other courts because of its unique facts that focus on the information available to the review board. See, e.g., *Manzetti v. Mercy Hosp. of Pittsburgh*, 741 A.2d 827 (Pa. Commw. 1999). One court that distinguished *Brown* described it as follows:

> While *Brown* does discuss the use of expert testimony in evaluating issues of immunity under HCQIA, the decision in *Brown* centered upon the fact that Dr. [Arlene] Brown was able to produce significant evidence to support her allegations that information submitted by the defendants in her medical review process was false or misleading. Indeed, Dr. Brown produced evidence that the individuals who investigated her actions were involved in encouraging another doctor to move his practice so as to be in direct competition with her. In other words, the defendants in *Brown* had conspired to manufacture allegations of improper behavior by Dr. Brown so as to put Dr. Brown out of business. In this setting, Dr. Brown's expert concluded that the defendants were not acting to further quality health

care. Neither were their actions reasonable under the facts of the case. It was for this reason that the federal district court in *Brown* refused to grant summary judgment on the basis of HCQIA immunity, a decision that was affirmed by the United States Court of Appeals for the Tenth Circuit. *Meyer v. Sunrise Hosp.*, 117 Nev. 313, 324, 22 P.3d 1142, 1150 (2001). Instead of applying *Brown*, the *Meyer* court stated: "Expert testimony is irrelevant to our consideration of immunity under HCQIA because we focus solely on the reasonableness of the peer reviewer's belief, not on whether the peer review action ultimately proved to be medically sound or actually furthered quality care." 117 Nev. at 323, 22 P.3d at 1149, citing *Sugarbaker v. SSM Health Care*, 190 F.3d 905 (8th Cir. 1999), and *Manzetti, supra.*

Although *Brown* allowed the use of expert testimony, that case also involved the use of experts to testify about the review process itself. *Brown, supra.* In cases involving the use of expert testimony after the fact to show that the standard of care was actually met, courts uniformly hold that the testimony will not rebut the presumption. See, e.g., *Lee, supra*; *Brader, supra*; *Mathews v. Lancaster General Hosp.*, 87 F.3d 624 (3d Cir. 1996); *Manzetti, supra.*

Here, Pantano's and Mailliard's testimonies cannot rebut the presumption. The presumption is focused on what the review board knew when it acted. Therefore, later expert testimony that McLeay acted appropriately in the cases reviewed cannot be used to rebut the presumption.

Although the record is sparse on details of the eight cases reviewed, McLeay signed his agreement to the meeting minutes of the committee when it imposed monitoring. When the committee later imposed further restrictions, it reviewed the cases, including two reports from nursing staff on the floors, two reports from nursing staff in the surgery department, two reports from anesthesiologists, and a number of cases identified as having substandard care. In a letter, McLeay acknowledged that "1992 was an aberration of my surgical care" and stated that he had his "'wake-up call.'" When McLeay's privileges were suspended, Bergan stated that it was troubled by the eight cases. In addition, Peetz testified that several cases were close together in time and

that a suspension would not occur unless the review board believed that harm might come to patients. Finally, Feldhaus testified that he personally was concerned about one of the eight cases that were listed when McLeay's privileges were suspended.

Although the evidence is not overwhelming as to the specific details of the cases reviewed, the record shows that a review was justified, and McLeay failed to present evidence to overcome the presumption to show that Bergan reasonably believed that it was acting in the furtherance of quality care. Accordingly, McLeay failed to meet his burden to present evidence that would allow a reasonable jury to conclude that Bergan's peer review process failed to meet the standards of the HCQIA.

### FALSE REPORTS

McLeay argues that no immunity exists for false databank reports when made with the knowledge they are false. He argues that Bergan never made a finding that he was incompetent or negligent or that he had committed malpractice, and he contends the evidence shows that Bergan knew the NPDB reports were false.

As previously discussed, all actions for damages are subject to immunity under the HCQIA. Section 11137(c), however, provides: "No person or entity . . . shall be held liable in any civil action with respect to any report made under this subchapter . . . without knowledge of the falsity of the information contained in the report." Reporting of peer review actions is mandated by the HCQIA.

Here, McLeay sought damages for several causes of action, including defamation. A defamation action seeking damages is subject to HCQIA immunity. See, generally, *Lee v. Trinity Lutheran Hosp.*, 408 F.3d 1064 (8th Cir. 2005); *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994). The record shows that the Bergan representative who filed the reports lacked personal knowledge of their accuracy and was relying on the actions of the review board and reporting its findings. Nor does the record indicate knowledge by Bergan that the reports were false. They simply reported the findings of the committee. See *Odom v. Fairbanks Memorial Hosp.*, 999 P.2d 123 (Alaska 2000).

We determine that McLeay's claims about false reporting are subject to the immunity provisions of the HCQIA and that McLeay failed to present evidence sufficient to overcome the presumption for summary judgment.

### EQUITABLE CLAIMS AND WAIVER

McLeay argues that his claims for equitable relief are not subject to immunity under the HCQIA. For example, in his petition, McLeay sought reinstatement of his privileges.

■ A few cases have applied HCQIA immunity to claims seeking reinstatement without analyzing the issue. See, e.g., *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461 (6th Cir. 2003). The HCQIA, however, specifically states that it applies to suits for money damages. See § 11111. It does not include actions seeking equitable relief. See, *Babcock v. Saint Francis Med. Ctr.*, 4 Neb. App. 362, 543 N.W.2d 749 (1996); *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261 n.14 (Del. Super. 2001). See, generally, *Sugarbaker v. SSM Health Care*, 190 F.3d 905 (8th Cir. 1999). Here, McLeay, in addition to seeking damages, also sought reinstatement of his privileges as a remedy. To the extent he sought equitable relief that did not involve an award of damages, those remedies are not subject to HCQIA immunity.

Bergan, however, argues that McLeay waived his claims because he failed to exhaust administrative remedies when he did not reschedule the hearing before the medical executive committee. In the alternative, it contends that the primary jurisdiction doctrine applies.

The district court analyzed the waiver issue only in determining that McLeay's false reporting claims were immune under the HCQIA. Because the court determined that Bergan was immune from liability under all of McLeay's claims, it did not specifically reach the waiver issue on the remaining claims, examine the record for issues of material fact concerning waiver of claims, or consider the legal arguments presented concerning waiver.

■ Because the district court did not consider whether McLeay waived his equitable claims, we do not consider the issue. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. See *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262

(2006). Accordingly, we reverse, and remand for further proceedings to determine whether McLeay is entitled to equitable remedies.

## CONCLUSION

We determine that Bergan was immune from liability for damages on all of McLeay's causes of action because it undertook a peer review action and McLeay failed to rebut the presumption that the review committee acted reasonably. Accordingly, we affirm the district court's grant of summary judgment on claims for damages. We also determine, however, that McLeay's claims for equitable relief are not subject to HCQIA immunity, and he may be able to proceed on those claims if they were not waived. Because the district court did not pass on that topic, we reverse the summary judgment to the extent it affects claims for equitable relief and remand the cause for further proceedings. Because we conclude that Bergan was immune from McLeay's defamation claims for damages, we do not discuss Bergan's cross-appeal.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., not participating.